I think that the next case on our argument calendar is Gonzalez-Alvarado v. Barr. If I have that right, then for the petitioner, do we have Christopher Straughan? Good morning, judges. May it please the court, Christopher Straughan, Northwest Immigrant Rights Project and the University of Washington Immigration Law Clinic for Petitioner. I'd like to reserve two minutes for rebuttal and I'll keep an eye on the clock. I believe the most straightforward issue that's dispositive in this case is the agency's failure to address the probative country conditions expert declaration and opinion. So the expert declaration in this case concluded that petitioner was at high risk of being tortured and killed by cartel members. The expert also spoke to acquiescence and internal relocation. This was argued to the IJ, to the Board of Immigration Appeals, and in our opening brief before this court, it was ignored in all three by the agency and respondent. This is clear error. This court requires in torture claims that the agency consider all evidence of torture. COLE, C-O-L-E, this court held that it was error to disregard an expert opinion in a convention against torture case. This is a wholesale failure, as Rodriguez Arias addressed, constituting reversible error by itself. I would further note that should respondent at this belated point offer some explanation for why the expert opinion should be given less weight, that would be asking to uphold the agency on a ground upon which the agency did not rely contrary to SCC v. Chenery, as well as waived in their response brief. So this court can decide this matter solely on that ground. The second straightforward ground in this case, which I think is dispositive, is the agency's erroneous decision on acquiescence. So this court has repeatedly and clearly stated that when there is voluminous country conditions on state and local corruption, indeed in the precise facts of this case, that is, fear of cartels in Mexico, then that is sufficient to meet the acquiescence requirement, even if there's some evidence of federal efforts, because obviously the federal efforts are not successful. Here, the uncontested record shows that there is such widespread state and local corruption. I think it's important to note here that respondents did not put on a case. That is, they submitted no evidence to counter petitioner's credible testimony, found credible by the immigration judge, the voluminous country conditions evidence put forward and prepared by the law students who prepared this case, numerous witness declarations, and two expert declarations that were all admitted into evidence. This includes U.S. State Department reports, Congressional Research Service reports. In light of this uncontested evidence of widespread corruption, petitioner met his burden on acquiescence. That was the only ground upon which the motion to reopen was denied. And because it's infirm, the motion to reopen denial as well is infirm. And the agency should have considered the probative evidence of a new recent threat that he received when he was detained at the Northwest Detention Center. Now, I also want to address the internal relocation issue. So there is no waiver of rule. The rule is that this court reviews the BIA decision except to the extent that it expressly adopts the IJ decision. This was not a Bourbano affirmance. Rather, the Board of Immigration Appeals reviewed the case. And when it got to internal relocation, it noted the immigration judge found against petitioner based on internal relocation. Petitioner spent eight pages briefing why this was incorrect. And then the Board of Immigration Appeals noted, but that's just one To paraphrase, we don't need to reach it. This court does not affirm an agency on a ground upon which it does not rely. The agency did not, the BIA did not adopt the immigration judge's internal relocation decision. It's not before this court. To the extent there's any ambiguity about that, it's unclear what the BIA decided, then that counsels for remand to the Board to clarify exactly what its holding was and when it was adopting the IJ decision, adopting the conclusions that the IJ made. Now, I'd like to address, now while I think those issues are dispositive of the case, I think it is important to address the future fear decision of the agency. And we contend that the agency's future fear of torture decision was not supported by substantial evidence, but was based only on inference, and we would say speculation. So, first of all, the immigration judge framed the very question of future fear incorrectly, asking only whether one particular cartel member, the highest member that Petitioner, as an undisputed informant, fingered, as opposed to considering the threat of the entire cartel and other cartel members that he had also informed on. But putting that aside, the essence of the agency's decision was that Petitioner didn't have a future fear because the time he was in Bureau of Prisons custody, from 2010 to 2017, he did not receive any threats from the cartel. So we argue that that's speculation on two points. One, that Petitioner would not be safe in Bureau of Prisons custody, that he would be attacked by cartel members. There's no evidence to support that in the record, and in fact, Petitioner presented evidence that the opposite was true, that the Bureau of Prisons actually is pretty effective at protecting people in its custody. That was in the motion to reopen. Second, it speculates that cartel members simply will forgive and forget transgressions over time. Now, that inference and speculation has to be weighed against the actual evidence that Petitioner submitted. The expert declaration, which was ignored, that said he was in danger, the record evidence that cartels despise informants and will attack them and track them down when they return to Mexico, as well as the credible threats that he reported up until he was put into BOP custody, years after that one high-level cartel member fled the U.S. after he was arrested and informed on by Petitioner. That was enough for the Seventh Circuit in Rivas Peña and Rodriguez Molinaro. There you had people who had been in federal BOP custody for six years, eight years, and the court not surprisingly concluded that cartels were willing to bide their time and that the record didn't show that the cartel had lost interest simply by the passage of time, given that the fear was that the person was going to be tortured on return to Mexico, not in the U.S. And of course here we also have the additional threats to Petitioner, the one that he outlined in his motion to reopen, as well as the threat to his cousin Francisco, who was similarly situated to him. That is, he was also an informant. He'd been identified as an informant. He was in federal Bureau of Prisons custody. His cousin was then threatened that when he was returned to Mexico, he was going to be killed. And after this cousin went back to Mexico, was deported to Mexico, and was living a before Petitioner presented his case to the immigration judge. Now, the I.J. in this case said, well, we don't know exactly what happened to this cousin. She speculated that it's possible that he could have been a victim of random crime in Mexico. But I think Madrigal, in Madrigal, this court really addresses that issue in that it said that the Petitioner must be credited in the absence of an explanation that it is at least as plausible. And that's on page 505 of that case. Here, the I.J. made the incorrect factual decision. She simply said, well, it's possible that he could have been a victim of crime. To do that, she ignored the totality of the circumstances, the threats that he had received, as well as probably the most dispositive issue, that when his family started looking into what happened, we have a missing person. The police said, don't look into this. It's dangerous. And also refused to look into it. Now, the most plausible explanation there is not that when you go to the police, the police tell you it's too dangerous to ask about it when you make a missing person's report. So in that sense, we think that the future fear determination by the agency is not supported by substantial evidence. Now, finally, what I'd like to address is the past torture issue. And we do contend that this the location of past torture has to be in the country from which you're seeking relief under the torture convention. So here, the judge said that the past torture, that the case was premised entirely on a future fear of torture, that he was never tortured in the past. Now, we argue that's clearly incorrect because Petitioner was shot in the United States. He was shot in Mexico. And that rises to the level of torture. The immigration judge made the threshold determination that because this happened in the U.S., it can't be past torture for consideration of whether he'll be tortured in Mexico. But that's based on incorrect reading of the regulations and statute. And in contrast, the asylum regulations and statute, as this court noted in Gonzales-Medina, read the plain language of the regulation as it states that past persecution is only considered to be that which happens in the country from which the person is seeking asylum. So for asylum purposes, past persecution by regulation must occur in the country from which you're seeking protection. In contrast, the torture convention statute and regulations contain no such geographical limitation. This is a plain language issue, and courts give meaning to differences in statutory and regulatory language. And if anything, in this case, that canon of statutory interpretation to recognize differences in regulatory language is that much more powerful. It's the same regulation. The past persecution and torture definition are in the exact same regulation, 8 CFR 1208.16. We presume that when we're looking at statutory and regulatory languages that those differences have meaning. I would note that respondent offers no legal argument as to why that statutory regulatory interpretation argument is incorrect. It's simply not there. And we ask this court to give effect to that plain language. Now, there are other errors in the past torture analysis of the immigration judge and the BIA as well. First, we did argue that there was past torture in Mexico. He received a death threat in Mexico after having been shot in the United States. The case most on point as to why that could be past torture is maybe COOP, K-H-U-P. And maybe most importantly, even if we're not reaching this geographical location of torture, the idea that past attacks and torture by cartels in the U.S. is irrelevant to future fear really turns the analysis on its head. The record evidence in this case was that Petitioner was more at risk in Mexico in the U.S. Cartels are constrained in the U.S. by law enforcement compared to Mexico. The fact that was tortured in the U.S. is even more probative of his fear of what's going to happen to him in Mexico. And this court has found in other cases that credible testimony alone can meet a petitioner's burden on a torture claim. It's found that country conditions evidence alone can meet a petitioner's burden on a torture claim. Expert opinions can be dispositive. In this case, Petitioner presented all of them, was found credible, voluminous evidence, expert declarations all admitted with respondents not putting on a case. We ask this court to find that Petitioner has met his burden under the Convention Against Torture. Counsel, I have one question for you. With regard to his being shot in the country, did he go to a hospital or a doctor or make a police report? Judge, that was addressed in front of the I.J. He was afraid of going to the hospital. He was found by the cartel members. So he just treated himself. Several days later, he went to his handler, his police officer slash DEA handler, and that relationship pretty much broke down because he was upset that he wasn't being protected. We did present an expert forensic medical evaluation confirming that he was shot, which was admitted into the record. So neither the board nor the I.J. questioned his account that he was shot by the gang cartel members. Okay. Thank you. Thank you. Setting aside the merits, counsel, do you have a view as to whether the panel should defer ruling pending the Supreme Court's decision in Nasrallah? We don't think that the panel should defer ruling because there are numerous legal issues here. We're not asking for purely a review of fact-finding error, but legal error as to not considering evidence, the torture convention definition. With your permission, I'd like to reserve the remaining time for rebuttal. Thank you. Thank you. Good morning, Your Honors. May it please the Court, Andrew Nsinga on behalf of the Attorney General. Foundationless opinions. That's what this case is really about because what Petitioner doesn't actually discuss is the record evidence. Instead, what we hear is a string of various so-called legal claims. But Petitioner doesn't confront the problems with his own evidence. His witnesses suppose things occurred. He suspects something occurred. The problem is there are so many unknowns in this case that Petitioner can't cover up those holes except by saying the agency, a fact finder, is compelled to fill them for him. We don't instruct a jury to say, well, this witness thinks something occurred. Jury, you are compelled to agree with that witness. And jury, you're compelled to string together those uncertainties, those unknowns, in order to find that a litigant bore their burden. It's not required under common sense. I think his argument, as I understand it, is more that the IJ and the BAA failed to grapple with the evidence that was presented. And there's ample authority remand in cases when the IJ fails to consider and analyze the record. So if I could have you respond specifically to the claim that counsel raised regarding an expert declaration that indicated a high risk of harm by cartel members. As I read the record, the IJ really focused very narrowly on Chui, in fact, solely on Chui. Is there indications in the record showing that the IJ appropriately considered the extent of harm that he may face from the cartel in general or other cartel members as well? Yes, Your Honor. In fact, what's surprising about Petitioner's argument is, in fact, their entire argument is based on I mean, that's actually the basis of Petitioner's argument that the IJ somehow ignored the cartel or his affiliates. Who are the affiliates? Our cartel. The next page, the lack of threats communicated by Chui or any of his associates. Who are the associates? The cartel members. To suggest that the immigration judge didn't address or understand that this involved a reading of the immigration judge's decision. Because, again, it's easier to say, well, someone ignored evidence than to confront how, for seven years, Petitioner never heard from the cartel, despite witnesses saying his own uncle was really deeply involved. That's what his witness said, really deeply involved with the cartel. Yet for seven years, nothing. For those seven years, he was in custody, was he not? Part of that time, he was in custody, Your Honor. But seven years since the last threat, and 11 years between the initial flipping on his fellow drug dealers and the time of his immigration judge hearing. So we're talking about a length of time here that Petitioner doesn't address. Returning to Judge Winsk's concern about the failure to consider. The difficulty, of course, is we have on one hand cases saying the agency is not required to write an exegesis, and there's reason for it. It's a 700-page record. The immigration judge is not required to simply go through and connect all the dots in the way that Petitioner desires or address how a fact finder is not going to address, make the inferential leaps of the ass. But then there's Cole, of course, who's always relied on to say, well, if you don't consider something, well, how do we know the immigration judge doesn't consider it? The immigration judge lists the expert report. And really, what does the expert report add? Again, the difficulty of arguing cases in a fairly short amount of time with a lot of facts is we need the court to look at the expert report, not an attorney's argument about what attorney thinks it means. What we don't have is testimony about how any of these opinions were based. So this so-called expert, who's merely just an attorney, talked to Petitioner. What information was conveyed, we don't know. Petitioner declined to call the expert witness. So what we have is, well, he talked to the Petitioner, and that's it. Well, except the problem is, is Petitioner still suspecting someone? Do we know who Chui is? Do we know really anything? What is the basis of that opinion? And even if we say, well, the agency completely ignored it, what's the relevance of it? It's based on background country conditions. We all know that there are cartels operating in Mexico and in the United States. The immigration judge's fact finder looks at the evidence and says, well, there's evidence of cartel involvement, and then there's a time gap, and then there's various claims about the cousin, brother, but no one knows anything. All the witnesses are just making the inferential leaps that they're entitled to. But a fact finder, under this court's standard of view, is not compelled to make all the inferences that Petitioner desires. When Petitioner glosses over the holes in their own case, it does not aid this court because we don't know how those unknowns are compelled to be filled by the inferences. And those inferences really do bear repeating in that Diego, his brother, he was shot either in 2006 or 7 or 2010. We don't know because the mom says one, Petitioner says the other. Why do we think he was shot by the cartel? Well, we assume. Assume. A fact finder is not required to follow an assumption. Francisco, the cousin, disappeared in 2015. Why? Well, apparently the family investigated this and they didn't learn much. So, again, we assume. A witness is allowed to assume, and that is fine. A fact finder is not mandated to assume. Petitioner talks about the threats his mom faced. When we actually looked at the mom's statement, what she says is three Americans were standing outside her door and she fled. That's it. What does that mean? We don't know. And the fact finder doesn't know. And the fact finder is not compelled to somehow find these three Americans were cartel members in any way. So, what we're left with is a lack of evidence, a lack of knowing who Chewy is and all that. Petitioner doesn't fill those holes and can't. Instead, raises a scattershot of so-called legal claims that aren't really legal. They're just complaints ultimately with the immigration judge's fact finding. And the court's task is not to re-weigh that evidence. That's for the fact finder to do is weigh that evidence and decide what, how all that evidence weighs out. To respond to your, Judge Wynn's question about Nasrallah, the government's not currently asking that the Court of Appeals hold cases in abeyance pending a decision on that. Some courts of appeals have been holding court's cases in abeyance, but the government is not specifically requesting it. That case comes out of the 11th Circuit where they have a somewhat different rule than this court does. Ultimately, when we look at the entirety of the record, the record doesn't compel reversal and petitioner's desire to gloss over the holes in his case and all the unknowns don't compel reversal. And we ask that the court deny the petition. Thank you, Your Honors. Thank you, Counsel. So, in this case, the immigration judge did incorrectly emphasize Chewy. And I think when you look at the exact requirement the immigration judge put on petitioner to find that he would show a future fear, it was that applicant must demonstrate it's more likely or not that one Chewy remains interested in harming applicant. Stop. Then it goes on to the second point, that Chewy has the means or ability to torture his, torture him, or is affiliated with people. So, the affiliation comes in related to Chewy, but the first requirement that the immigration judge incorrectly put on petitioner, contrary to his whole cartel targeting argument, was that Chewy remained interested. I note, too, that the expert declaration, we had him available by telephone to testify. ICE counsel had asked that the hearing wrap up earlier and conceded that they would not cross-examine him. And the immigration judge, based on the ICE attorney's representation, admitted his testimony as if he had testified. This is not a case where the BIA said, we've considered all evidence. We considered the expert declaration and decided it was not probative. There is simply no mention of it whatsoever in the BIA decision. And the requirement for CAT cases, for Convention Against Torture cases, is higher than in other forms of relief. All evidence by regulation and case law must be considered. Cole is directly on point for this matter. Thank you. Thank you, counsel. Thank you, Gonzalez. Alvarado case shall be submitted.
judges: Gould, Nguyen, R. Collins